Michael Eugene Thompson appeals from the denial of his petition seeking post-conviction relief under Rule 20, Alabama Temporary Rules of Criminal Procedure. The petition was denied by the trial court after a full evidentiary hearing, during which the appellant was represented by counsel.
The appellant was convicted of the capital murder of Maisie Gray. Maisie Gray was working in the Majik Mart store in Attalla, Alabama, on December 10, 1984. The appellant robbed and abducted Gray at gunpoint. He then forced her into a well and shot into the well several times. The *Page 1218 
cause of death was determined to be gunshot wounds.
This court affirmed the conviction in Thompson v. State,503 So.2d 871 (Ala.Crim.App. 1986). This court's opinion was affirmed in Ex parte Thompson, 503 So.2d 887 (Ala. 1987), cert. denied, Thompson v. Alabama, 484 U.S. 872, 108 S.Ct. 204,98 L.Ed.2d 155 (1987). Thompson then filed this petition seeking post-conviction relief in the Blount County Circuit Court. He raised eighteen issues in the petition, some of which contain multiple subparts. After an evidentiary hearing, the trial court made express written findings of fact and conclusions of law. These findings and conclusions are herein adopted as Appendix A to this opinion and approved in this opinion.
The appellant asserted several issues in the post-conviction proceeding which were fully covered or dealt with, in whole or in part, in this court's original opinion reported inThompson v. State, 503 So.2d 871 (Ala.Crim.App. 1986).[1]
We completely adhere to the views heretofore expressed in the opinion of this court on the original appeal. Several of the appellant's claims, either in whole or in part, are procedurally barred from review because (1) they could have been raised at trial or on direct appeal but were not[2] or (2) they were raised at trial but not on *Page 1219 
appeal.[3] Other of the appellant's claims are procedurally barred from review because they were not raised in his Rule 20 petition.[4] See e.g., Jackson v. State, 501 So.2d 542
(Ala.Crim.App. 1986), cert. denied, 483 U.S. 1010, 107 S.Ct. 3242,97 L.Ed.2d 746 (1987); Boatwright v. State, 494 So.2d 929
(Ala.Crim.App. 1986). The appellant apparently argues that this court should apply the "plain error" rule in order to review those claims that are procedurally barred because the claims are barred because his counsel was constitutionally ineffective. We need not address this argument, because counsel was not ineffective.
In addition to the claims that are procedurally barred and the claim of ineffective assistance of counsel at both the trial and appeal stages, the appellant also claims that the State failed to provide him with exculpatory evidence.
 I
We have carefully considered the appellant's assertions with reference to his representation by counsel. We conclude that he failed to show either inadequate or ineffective representation by counsel at trial or on original appeal. The appellant failed to *Page 1220 
satisfy either prong of the test set forth in Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984). See also Baldwin v. State, 539 So.2d 1103
(Ala.Crim.App. 1988).
A review of the record leads us to conclude that the circuit court's findings of fact and conclusions of law are correct and are fully supported by the record. We also note that the appellant was fully and fairly represented not only at his original trial and on original appeal but also at the Rule 20 petition hearing and in his appeal of that proceeding, which is presently before this court.
 II
The appellant also contends that the State failed to provide him with exculpatory evidence or evidence that could be used to impeach the State's key witness.
 A
The appellant contends that the State failed to inform him that Shirley Franklin was granted immunity from prosecution in exchange for her testimony against him and that it failed to provide him with a statement made to the police by Shirley Franklin. This argument has no merit. There was absolutely no evidence presented at the hearing that Shirley Franklin was granted immunity from prosecution. In fact, the only evidence as to this claim was to the contrary. Furthermore, the appellant's trial attorney testified that, although he was not given a copy of Shirley Franklin's statement, he was allowed to listen to and copy a taped statement given by Shirley Franklin. There was absolutely no testimony presented that Shirley Franklin received a promise of payment or reward for her testimony.
 B
The appellant also contends that the State withheld exculpatory evidence based on statements by Jack Lee Roberts, who said he saw a man in the Majik Mart shortly before Maisie Gray disappeared. The appellant contends that the trial court erred by applying the improper legal standard to determine the materiality of the alleged exculpatory evidence. He contends that the trial court erred in finding that the evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of this proceeding would have been different." (C.R. 243). The appellant bases this argument on a statement made by the Alabama Supreme Court in Ex parte Womack, 541 So.2d 47 (Ala. 1988). In that case, the court noted that Part III of UnitedStates v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481
(1985), was not the opinion of the United States Supreme Court, but of only one Justice. He further contends that the correct test of materiality is whether the evidence "might have affected the outcome of the trial." Womack at 64 (quoting,United States v. Agurs, 427 U.S. 97, 104, 96 S.Ct. 2392, 2397,49 L.Ed.2d 342 (1976)).
A review of Bagley reveals, however, that the majority of the court held that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." 473 U.S. at 682, 685, 105 S.Ct. at 3383, 3385. One concurring Justice, with whom two other Justices concurred, stated:
 "As the Justice correctly observes, this standard is 'sufficiently flexible' to cover all instances of prosecutorial failure to disclose evidence favorable to the accused. Ibid. Given the flexibility of the standard and the inherently fact-bound nature of the cases to which it will be applied, however, I see no reason to attempt to elaborate on the relevance to the inquiry of the specificity of the defense's request for disclosure, either generally or with respect to this case. I would simply hold that the proper standard is one of reasonable probability. . . ." *Page 1221 
Id. at 685, 105 S.Ct. at 3385. Thus, a majority of the Court upheld the "reasonable probability" standard. The concurring Justices simply stated that the Court need not address the specificity of the defense's request. This interpretation is further supported by Pennsylvania v. Ritchie, 480 U.S. 39, 57,107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987), which states:
 "Although courts have used different terminologies to define 'materiality,' a majority of this court has agreed, '[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' United States v. Bagley, supra, 473 U.S., at 682, 105 S.Ct., at 3384 (opinion of Blackmun, J.), see id. at 685, 105 S.Ct., at 3385 (opinion of White, J.)" (Emphasis added.)
We affirm the trial court's determination that the alleged exculpatory evidence was not material and find that the trial court applied the correct legal standard in reaching its conclusion. See, e.g., Bradley v. State, 557 So.2d 1339,1342-43 (Ala.Crim.App. 1989) for another Alabama case applying the same standard to Brady claims. Furthermore, we note that the allegedly exculpatory evidence is also not material under the "might have affected the outcome" test proposed by the appellant. The appellant also failed to show the favorable character of the suppressed evidence for the defense as to his Brady claims. See Bradley.
We have carefully reviewed the allegations and legal arguments in support of this appeal and find no error. For the reasons stated herein, the judgment of the Blount County Circuit Court denying the appellant's Rule 20 petition is due to be, and it hereby is, affirmed.
AFFIRMED.
All the Judges concur.
 APPENDIX A IN THE CIRCUIT COURT OF BLOUNT COUNTY, ALABAMA MICHAEL EUGENE THOMPSON, Petitioner, v. STATE OF ALABAMA, Respondent. Case No. CC-85-060.02 Filed February 15, 1990. OPINION AND ORDER
Based on the evidence presented at trial and the evidentiary hearing on the above-styled petition for relief from conviction or sentence, the Court enters the following findings of fact and conclusions of law:
 PROCEDURALLY BARRED CLAIMS A. Claims Which Were Raised On Appeal
Four of the claims contained in the amended petition, in whole or in part, were raised and addressed on appeal from Thompson's conviction and death sentence:
 Claim I — "Petitioner's conviction was obtained by the unconstitutional failure of the prosecution to disclose to the petitioner evidence favorable to the petitioner [insofar as it alleges that the State failed to disclose Shirley Franklin's criminal record]."
 Claim II — "Petitioner was denied a fair trial as a result of the introduction into evidence of alleged confessions that, if given at all, were given by petitioner involuntarily, and without the presence of counsel, in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and of the state constitution and laws of the State of Alabama [insofar as it alleges that petitioner's confessions were coerced or otherwise involuntary]."
 Claim XVI — "The Court improperly considered inadmissible evidence presented at the sentencing hearing in violation of petitioner's rights."
 Claim XVII — "Petitioner's death sentence was imposed without the constitutionally *Page 1222 
required consideration of chronic alcohol and drug abuse and extreme mental disturbance as mitigating circumstances."
See, Thompson v. State, 503 So.2d 871, 875-876, 877-878,880-882 (Ala.Cr.App. 1986), aff'd, 503 So.2d 887 (Ala.), cert.denied [484 U.S. 872], 108 S.Ct. 204 [98 L.Ed.2d 155] (1987). Claims which were raised on appeal are barred from further review. Temporary Rule 20.2(a)(4), Alabama Rules of Criminal Procedure; Ex Parte Rudolph, 276 Ala. 392, 393, 162 So.2d 486
(1964); Richardson v. State, 419 So.2d 289 (Ala.Cr.App.), cert.denied, No. 81-937 (Ala. 1982); Summers v. State,366 So.2d 336, 340 (Ala.Cr.App. 1978), cert. denied, 366 So.2d 346 (Ala. 1979).
 B. Claims Which Could Have Been But Were Not Raised at Trial
Eleven of the claims contained in the amended petition, in whole or in part, could have been raised at trial, and then on appeal, but were not:
 Claim II — "Petitioner was denied a fair trial as a result of the introduction into evidence of alleged confessions that, if given at all, were given by petitioner involuntarily, and without the presence of counsel, in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and of the state constitution and laws of Alabama [insofar as it is based on allegations involving Shirley Franklin]."
 Claim III — "Petitioner was deprived of a fair trial as a result of his attorney's conflict of interest resulting from his prior representation of petitioner's father's killer."
 Claim VI — "Petitioner was deprived of an impartial jury through improper juror exclusion in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution [insofar as it pertains to jurors who were excused without objection by defense counsel]."
 Claim IX — "The victim's daughter's participation in the prosecution of petitioner was highly improper and denied petitioner a fair trial and due process."
 Claim X — "The prosecutors' misconduct and arguments at trial and at petitioner's sentencing hearing before the jury and before the judge were improper and violated rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the state constitution and laws of Alabama."
 Claim XI — "The Court's failure to give a jury instruction on a lesser included offense where the evidence would have supported such a verdict deprived petitioner of a fundamentally fair trial in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and the state constitution and laws of Alabama."
 Claim XII — "The Court's instructions to the jury violated petitioner's constitutional right to a fair trial."
 Claim XIII — "The Court's instructions to the jury at the penalty phase to the effect that the jury's verdict was merely advisory deprived petitioner of a fundamentally fair trial and due process, and constituted a violation of petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the state constitution of Alabama."
 Claim XIV — "Alabama's application of the "especially heinous, atrocious and cruel" aggravating circumstance is unconstitutionally vague and as applied to petitioner's case violates due process and the prohibition against cruel and unusual punishment."
 Claim XV — "The Alabama death penalty statute, § 13A-5-45 et seq., as implemented by the courts of Alabama and applied in this case, is unconstitutional."
 Claim XVIII — "Petitioner's death sentence was imposed in violation of the Eighth and Fourteenth Amendments to the United States Constitution and the state constitution and laws of Alabama because it was based upon aggravating circumstances that merely duplicated elements of the crime of capital murder and *Page 1223 
because the Alabama statutory scheme does not allow for a meaningful independent review of the sentencing judge."
Claims which could have been raised at trial, by objection or motion, and then on direct appeal but were not are barred from further review. Temporary Rule 20.2(a)(3) (5), Alabama Rules of Criminal Procedure; Ex Parte Ellison, 410 So.2d 130, 132
(Ala. 1982); Jackson v. State, 501 So.2d 542, 544 (Ala.Cr.App. 1986), cert. denied, No. 86-269 (Ala. 1987); Magwood v. State,449 So.2d 1267, 1268 (Ala.Cr.App.), cert. denied, No. 83-1143 (Ala. 1984).
 C. Claims Which Were Raised At Trial But Not On Appeal
Four of the claims contained in the amended petition, in whole or in part, were raised at trial but not on appeal:
 Claim V — "Petitioner's rights to a fair trial by an impartial jury under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution were violated by the Court's failure to grant a change of venue."
 Claim VI — "Petitioner was deprived of an impartial jury through improper juror exclusion in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution [insofar as it pertains to jurors who were excused over objection by defense counsel at trial]."
 Claim VII — "Petitioner was deprived of an impartial jury through improper juror inclusion in violation of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution."
 Claim VIII — "Petitioner's rights to a fair trial by an impartial jury were violated by the Court's restrictions on the voir dire examinations of prospective jurors."
While each of these claims were raised at trial, none was raised on appeal. See, Thompson v. State, 503 So.2d 871
(Ala.Cr.App. 1986), aff'd, 503 So.2d 887 (Ala.), cert. denied
[484 U.S. 872], 108 S.Ct. 204 [98 L.Ed.2d 155] (1987). Claims which could have been but were not raised on appeal are barred from further review. Temporary Rule 20.2(a)(5), Alabama Rules of Criminal Procedure; Ex Parte Rudolph, supra; Bass v. State,417 So.2d 582, 584 (Ala.Cr.App.), cert. denied, 417 So.2d 588
(Ala. 1982); Summers v. State, 366 So.2d 336, 340
(Ala.Cr.App. 1978), cert. denied, 366 So.2d 346 (Ala. 1979).
 EXCULPATORY EVIDENCE
In Claim I of the amended petition, Thompson alleged that the prosecution withheld material exculpatory evidence in four instances:
 1. a promise of immunity from prosecution for Shirley Franklin;
 2. payment or promise of a reward to Shirley Franklin or Gary Franklin;
 3. a witness who described a person and automobile he saw at the robbery and abduction scene which allegedly did not match Thompson's appearance and automobile; and
 4. the untimely disclosure of Shirley Franklin's criminal record at trial.
As noted above, this fourth allegation is barred from consideration here because it was raised and addressed on appeal from Thompson's conviction and death sentence. As to the remaining three allegations, Thompson is not entitled to relief because this claim lacks merit.
 A. Legal Standard
In Brady v. Maryland, 373 U.S. 83 [83 S.Ct. 1194,10 L.Ed.2d 215] (1963), the Supreme Court required the prosecution to disclose evidence in its possession which was both favorable to a defendant and material to deciding guilt or punishment.United States v. Bagley, 473 U.S. 667, 674 [105 S.Ct. 3375,3379, 87 L.Ed.2d 481] (1985). In Bagley, the Court noted that the non-disclosure of favorable evidence "amounts to a constitutional violation only if it deprives the defendant of a fair trial." Id., at 678 [105 S.Ct. at 3381]. A new trial must occur "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial."Id.
The Court then announced the standard to be used in determining whether undisclosed exculpatory evidence was material: *Page 1224 
 We find the Strickland formulation of the Agurs
test for materiality sufficiently flexible to cover the "no request," "general request" and "specific request" cases of prosecutorial failure to disclose evidence favorable to the accused: The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.
Id., at 682 [105 S.Ct. at 3383]. As to each of these three allegations, Thompson has failed to establish that he is entitled to relief.
 B. Immunity
At the three-day evidentiary hearing in this case, Thompson presented no evidence to show that Shirley Franklin was promised or received immunity from prosecution. Because Thompson has not proved any immunity agreement existed, he has not proved that exculpatory evidence existed to be withheld. Because Thompson has not proved any immunity agreement existed, he has not proved a reasonable probability that, but for the non-disclosure of such an agreement, he would not have been convicted or sentenced to death. This allegation is without merit.
 C. Rewards
The testimony and exhibits at the hearing established that, after Thompson was convicted and sentenced to death, M.L. Carter, the chief investigator for the Etowah County Sheriff's Office, recommended that Gary Franklin receive a reward for his actions. Defendant's Exhibit 16. According to Chief Carter, Gary Franklin received a one thousand dollar ($1,000.00) reward from the Munford Corporation. Chief Carter wrote this letter because, after Thompson was convicted, he thought Gary Franklin deserved the reward. Chief Carter thought Gary Franklin was entitled to the reward because he had contacted the police while Shirley Franklin had not.
Chief Carter never discussed any reward before this letter with Gary Franklin or Shirley Franklin and he never heard either of them mention any reward. Thompson presented no evidence showing that either Shirley Franklin or Gary Franklin knew about any reward before or during Thompson's trial. Thompson presented no evidence showing that either Shirley Franklin or Gary Franklin were promised any reward before or during Thompson's trial. While, almost a year after Thompson's trial, Etowah County Sheriff McDowell wrote a letter recommending that Shirley Franklin receive a reward, Defendant's Exhibit 17, this letter does not show that Shirley Franklin had been promised or knew of any reward at the time of trial. From all that the evidence before this Court shows, Shirley Franklin was not promised a reward before or during trial and never received any reward, even though she attempted to obtain one almost a year after Thompson's trial.
The evidence presented by Thompson does not show that a promise to pay or payment of a reward existed at trial such as would have constituted impeaching evidence to be disclosed. Further, no reward was ever paid to a witness against Thompson since the only reward proved was paid to Gary Franklin. Given Chief Carter's testimony, this payment to Gary Franklin was not a ruse or attempt to disguise a payment to Shirley Franklin but rather was made to the person who contacted the police with information about Mrs. Gray's murder. Therefore, Thompson has failed to prove that exculpatory evidence existed at trial to be withheld.
Additionally, there is no reasonable probability that, had Shirley Franklin been shown to be aware of or promised a reward and had such knowledge or promise been used in cross-examining her, the outcome of Thompson's trial would have been different. Shirley Franklin's account of Thompson's actions and statements on the night of the murder were consistent throughout the investigation and trial. Further, her testimony was fully corroborated by Thompson's confessions. *Page 1225 
For these reasons, this allegation too lacks merit.
 D. Jack Lee Roberts
During their investigation of this crime, Attalla police detectives interviewed Jack Lee Roberts, who had been in the store where Mrs. Gray worked on the night she was murdered. He gave them a description of a man he saw there and also an automobile. Defendant's Exhibit 8. This statement was given to Thompson's lawyers in response to their discovery motion before trial. Defendant's Exhibits 24, 26, and 27. Roberts also assisted in developing a composite sketch of the person he saw in the store. Defendant's Exhibits 4 and 4a.
Roberts was later hypnotized. A tape recording of Roberts' interview under hypnosis, Defendant's Exhibit 5, and an Attalla police report and notice, Defendant's Exhibits 2 and 3, respectively, were not provided to Thompson's trial lawyers.
Based on the testimony at trial and the hearing on this petition, it is clear that the prosecution did not withhold material exculpatory evidence as to Roberts. At the time of trial, Thompson had given two versions of the crime, one in which he robbed, abducted and murdered Mrs. Gray, and another in which he robbed and abducted Mrs. Gray but Shirley Franklin killed her. Given these stories, nothing in any of the Roberts information was helpful since Thompson admitted being at the store. Therefore, the Roberts information was not exculpatory.
Further, the existence of Roberts and his descriptions of the man and automobile were not withheld by the prosecution. At the hearing on this petition, Thompson established that the primary statement of Roberts to the Attalla police was in fact given to his trial lawyers. While additional information existed in police files, that additional information does not materially add to the value of Roberts as a source of exculpatory evidence. The prosecution clearly notified the defense of Roberts' existence and the nature of his information when it produced his statement, Defendant's Exhibit 8. Therefore, the Roberts information was not withheld.
Finally, the Roberts information, even taken as a whole, is clearly not material. Given Thompson's admission to his lawyers that he abducted Mrs. Gray and his trial testimony to the same effect, there is no reasonable probability that, but for the failure to produce the information obtained from Roberts, Thompson would not have been convicted and sentenced to death. Until the hearing on this petition, Thompson had never denied being at the store and abducting Mrs. Gray.
Given Thompson's statements to his lawyers before the trial and his trial testimony, there was no reason to believe that Roberts' information was helpful. In fact, as noted by B.J. McPherson, the composite sketch developed by Roberts resembles Thompson. That sketch, Defendant's Exhibits 4 and 4a, much more closely resembles Thompson, as shown in State's Exhibit 2, than it does Ricky Pope, as shown in State's Exhibit 3, whom Thompson now claims robbed, abducted, and murdered Mrs. Gray. Thus, it appears that Roberts saw Thompson at the store, which fact hardly exculpates Thompson.
Finally, this evidence is not material because Thompson's latest version of the events on the night of the murder is false. The Court has observed Thompson's demeanor both at trial and at the hearing on this petition and he is not a credible witness. The Court credits Thompson's confessions as being the most accurate versions of his actions. Thompson, who admits telling lies under oath at his trial, now says that thereal version of what happened is that Ricky Pope was the guilty party. However, Pope, as shown by both his photograph and physical description on State's Exhibit 3, cannot be and is not the man described by Roberts. Therefore, there is no reasonable probability that, but for the absence of all the information from Roberts about what he saw, the outcome of Thompson's trial would have been different. This allegation lacks merit. There is no reason to believe that if Thompson had had all of the Roberts information he *Page 1226 
would have selected a different story to tell at trial. Further, even if he had selected his current story, there is no reasonable probability of a different result because that story is false and would have been proven to be false at trial.
 INEFFECTIVE ASSISTANCE OF COUNSEL A. Legal Standard
Ineffective assistance of counsel claims are governed by the United States Supreme Court's decision in Strickland v.Washington, 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984). After recognizing that the benchmark for judging any claim of ineffectiveness must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," the Supreme Court announced in Strickland that there were two components to an ineffective assistance of counsel claim:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id., at 687 [104 S.Ct. at 2064]. The Court held that the proper standard for attorney performance is an objective one: "simply reasonableness under prevailing professional norms." Id., at 688 [104 S.Ct. at 2065]. The Supreme Court held that:
 Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134 [102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See Michel v. New York [Louisiana], supra, 350 U.S. [91] at 101 [76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpastor, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 343 (1983).
Id., at 689-690 [104 S.Ct. at 2065-2066] (emphasis added). After a petitioner has identified the specific acts or omissions which he alleges were not the result of reasonable professional judgment, the court must determine whether those acts are "outside the wide range of professionally competent assistance." Id., at 690 [104 S.Ct. at 2066]. In making this determination, "the court should recognize that counsel isstrongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. (emphasis added). The Supreme Court said that courts must also recognize that strategic choices made after reasonable investigation are virtually unchallengeable, and *Page 1227 
the reasonableness of a counsel's actions may be determined or substantially influenced by what the defendant has told him.Id.
Even when a counsel's performance is outside the wide range of professional reasonableness, the judgment in question is not to be set aside unless the petitioner affirmatively proves prejudice. Id., at 691-693 [104 S.Ct. at 2066-2068]. It is not enough that a defendant "show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693 [104 S.Ct. at 2067]. Instead:
 The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
Id., at 694 [104 S.Ct. at 2068] (emphasis added). More specifically, the Supreme Court held:
 When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.
Id., at 695 [104 S.Ct. at 2068-2069]. In making a prejudice determination, the totality of the evidence that was before the judge must be considered.
Three additional Supreme Court decisions have a bearing on evaluating Thompson's ineffective assistance of counsel claims. The First is Engle v. Isaac, 456 U.S. 107 [102 S.Ct. 1558,71 L.Ed.2d 783] (1982), in which the Supreme Court held:
 Every trial permits a myriad of possible claims. Counsel might have overlooked or chosen to omit respondent's due process argument while pursuing other avenues of defense. We have long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim, . . .
Id., at 133-134 [102 S.Ct. at 1575] (emphasis added).
The second is United States v. Cronic, 466 U.S. 648
[104 S.Ct. 2039, 80 L.Ed.2d 657] (1984), in which the Supreme Court held:
 The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted — even if defense counsel may have made demonstrable errors — the kind of testing envisioned by the Sixth Amendment has occurred. . . .
Id., at 656 [104 S.Ct. at 2045] (footnotes omitted). The Cronic
decision also held that: "[b]ecause we presume that the lawyer is competent to provide the guiding hand that the defendant needs . . . the burden rests on the accused to demonstrate aconstitutional violation." Id., at 658 [104 S.Ct. at 2046] (footnote omitted) (emphasis added).
The third Supreme Court decision is Smith v. Murray
[477 U.S. 527], 106 S.Ct. 2261 [2661, 91 L.Ed.2d 434] (1986). In that case, the Court recognized that the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail is the hallmark of effective appellate advocacy. Id.
[106 S.Ct.] at 2667. The Court concluded:
 It will often be the case that even the most informed counsel will fail to anticipate a state appellate court's willingness to reconsider a prior holding or will underestimate the likelihood that a federal habeas court will repudiate an established state rule. But, as Strickland v. Washington made clear, "[a] fair assessment of attorney performance requires that every effort be made to eliminate *Page 1228 
the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S., at 689, 104 S.Ct., at 2065. Viewed in light of Virginia law at the time Mr. Pugh submitted his opening brief to the Supreme Court of Virginia, the decision not to pursue his objection to the admission of Dr. Piles' testimony fell well within the "wide range of professionally competent assistance" required under the Sixth Amendment to the Federal Constitution. Id. [466 U.S.], at 690, 104 S.Ct., at 2066.
Id.
 B. Thompson's Trial and Appellate Counsel
Thompson was represented at his 1985 capital murder trial and on appeal through the Alabama Supreme Court by B.J. McPherson and John Dobson. Both were appointed to represent Thompson by this Court. Both McPherson and Dobson are and were at the time of Thompson's trial experienced and competent trial attorneys.
B.J. McPherson is and was at the time of Thompson's 1985 capital murder trial in private practice in Blount County, Alabama, and had been since he was admitted to practice in 1969. At the time of Thompson's trial, 25 to 30 percent of his practice was criminal defense work; he had tried 150 to 200 felony cases; including ten or eleven murder cases.
John Dobson is currently a District Court Judge for the 30th Judicial Circuit which includes Blount County, Alabama. At the time of Thompson's trial, he was an attorney in private practice in Blount County and had been since 1976. His practice was 20 to 25 percent criminal defense work and he had been involved in and tried felony cases, although he had not been involved in any capital murder trials.
Prior to the trial of this case, Thompson's attorneys met with him for more than 20 hours. During some weeks they met with him daily, especially close to trial. Thompson's attorneys also undertook a great deal of investigation and research into the legal issues in this case. Based on conversations with Thompson, the fact that Thompson had confessed, and on the results of the psychiatric examinations, Thompson's trial counsel developed a trial strategy that involved a theory of lesser culpability and putting the State to its burden of proof.
This Court had the opportunity to observe both trial counsel when they testified at the evidentiary hearing in this case and finds that both John Dobson and B.J. McPherson were credible witnesses.
 C. Specific Claims
In his Rule 20 petition, Thompson raised twenty-four claims of ineffective assistance of counsel. At the evidentiary hearing held on May 23, 24, and 25, 1989, Thompson called fourteen witnesses including both of Thompson's trial attorneys, John Dobson and B.J. McPherson. He also introduced 30 exhibits. The State called two witnesses and re-called John Dobson. The State also introduced 3 exhibits. Having considered all the evidence, the Court makes the following findings:
1. Allegations that trial counsel failed to adequately communicate with and advise Thompson
In paragraph 19(a), Thompson alleged that Dobson and McPherson failed to adequately communicate with him before, during, and after trial. This allegation is contradicted by the evidence at the Rule 20 evidentiary hearing.
Prior to trial, McPherson and Dobson met with Thompson extensively. In those meetings with Thompson, his trial attorneys discussed trial strategy and his defense with him. Trial procedures were also discussed with Thompson. State's Exhibit 1, which is a transcript of a conversation between Thompson and his attorneys prior to Thompson's trial, which was taped by trial counsel, reveals that defense decisions were discussed with Thompson. For example, trial counsel discussed with Thompson whether he wanted his statement of the events surrounding the crime, as given to his attorneys, turned over to the sheriff's office. It also reveals that trial counsel *Page 1229 
explained to Thompson the possible consequences of turning over that statement, which incriminated Shirley Franklin.
The transcript reveals that Thompson's version of the events on the night of the crime were discussed with him in detail; a description given by a witness who was on the scene prior to the victim being reported missing was discussed with him; and, the various motions to be filed were discussed with him. State's Exhibit 1 also reveals that a possible insanity or diminished capacity defense was discussed with Thompson and the procedures required to establish such a defense were explained and discussed with Thompson.
In addition, McPherson and Dobson testified that they met and discussed the trial and Thompson's defense during trial, each morning before trial began, and each evening after proceedings were adjourned. This Court finds that the testimony of John Dobson and B.J. McPherson that they communicated with Thompson regarding his defense and trial procedures is credible, and that Thompson's testimony to the contrary is not credible. The evidence reveals that trial counsel were very conscientious in their communication with Thompson and in advising him of trial procedures. Thompson has failed to establish that his trial counsel's performance was deficient in their communication with Thompson.
Thompson has also failed to establish that he was prejudiced by any failure of his trial counsel to communicate with him. Thompson presented no evidence that his trial counsel failed to communicate anything to him that would have made a difference in the outcome of his trial. Thompson did not prove a reasonable probability that, but for trial counsel's failure to communicate some information to him, the outcome of his trial would have been different. Strickland v. Washington,466 U.S. at 694 [104 S.Ct. at 2068].
Thompson also has not shown that his trial counsel failed to competently advise him or gave him erroneous advice as to the charges pending against him; the defense strategy; the effect of having Thompson testify during the guilt phase of the trial; the effect of not having Thompson testify before the jury during the penalty phase of the trial; the effect of not having Thompson's mother testify before the judge immediately prior to sentencing; or the effect of failing to adequately prepare for the penalty phase of the trial. These claims are contained in paragraph 19(c).
Thompson presented no evidence that his trial counsel failed to advise, or erroneously advised, Thompson that he was charged with the capital murder of Maisie Carlene Gray, and of the possible consequences of that charge. He has therefore failed to demonstrate that trial counsel's performance was deficient as to this claim.
Trial counsel thoroughly advised and discussed defense strategy with Thompson, including a possible insanity defense as is reflected in State's Exhibit 1. The trial attorneys also explained the difficulty in defending the version of the crime he gave them, considering the fact that he had given a different version in his confessions. Thompson has not demonstrated that his trial counsel's performance was deficient as to this claim.
Trial counsel were also very diligent in explaining to Thompson the effect of his testifying during the guilt phase of the trial. Again, this is reflected in State's Exhibit 1. Trial counsel explained the problems and possible consequences of Thompson telling a different story in court than he told in his confession. After explaining to Thompson that he had the right to testify or not to testify, trial counsel advised Thompson to take the stand and testify at the guilt stage of the trial. This advice was reasonable in light of Thompson's wanting the jury to disregard his confession to law enforcement officers; believe that he gave them that story in order to protect his girlfriend, Shirley Franklin; and that it really was Shirley Franklin who actually shot and killed Mrs. Gray. Thompson has failed to demonstrate that his trial counsel's performance was deficient as to this claim.
This Court finds that trial counsel did advise Thompson as to the importance of *Page 1230 
his testifying before the jury during the penalty phase of the trial and the possible effects of his not testifying. Trial counsel advised Thompson to testify at the penalty phase but he refused, telling his trial counsel he "wasn't going to get on the stand and beg those bastards for anything." The trial record also reflects that Thompson was advised of his right to testify and that he did not want to. Thompson's assertions to the contrary are not credible. Thompson has failed to demonstrate that his trial counsel's performance was deficient as to this claim.
Thompson presented no evidence on his claim that his trial counsel failed to competently advise him or gave him erroneous advice regarding the effect of not having his mother testify before this Court immediately prior to sentencing. There is no evidence therefore that his counsel's performance was deficient as to this claim. Furthermore, there was no prejudice from the failure of the mother to testify immediately prior to sentencing. This Court is the same court that heard evidence at both the guilt and penalty stages in the 1985 trial of this case. Thompson's mother, Joyce Parker, testified at the penalty phase of this case as to Thompson's drug and alcohol problems and asked the jury for mercy. This Court heard that testimony and had Mrs. Parker also testified after the jury's recommendation and prior to sentencing before this Court, the sentence imposed would have been the same. Therefore, there is no prejudice from any failure on trial counsel's part to advise Thompson of the effects of his mother taking the stand immediately prior to sentencing.
Thompson presented no evidence that his trial counsel failed to advise, or erroneously advised, Thompson of the effect of failing to adequately prepare for the penalty phase of the trial. He has therefore not shown his trial counsel's performance was deficient. Further, trial counsel did in fact adequately prepare for the penalty phase, see pp. 1233-1235, below. Therefore, there is no prejudice from trial counsel's failure to advise Thompson of the effects of failing to adequately prepare for the penalty phase of the trial.
This Court finds that Thompson's trial attorneys competently and correctly advised him as to the claims in paragraph 19(c) on which testimony was presented. As to all of his allegations in paragraph 19(c), Thompson has not only failed to establish that his trial counsel's performance was deficient, he has also failed to establish any prejudice. In order to succeed on an ineffective assistance of counsel claim, a defendant must establish both deficient performance and prejudice. Thompson has not shown that but for his counsel's performance as to the claims in paragraph 19(c), the result of the trial would have been different. This claim of ineffective assistance of trial counsel is without merit.
2. Allegations that trial counsel failed to investigate and prepare
In paragraph 19(a) Thompson alleges that trial counsel did not adequately investigate his case. This allegation is contradicted by the evidence submitted at the Rule 20 hearing.
Upon being appointed to represent Thompson in this case, trial counsel learned that Thompson had given a confession implicating himself as the sole perpetrator of this crime. Subsequent to that, trial counsel were told two or three different stories by Thompson as to what occurred on the night Maisie Gray was kidnapped, robbed, and murdered. However, he always maintained that he was involved in the robbery and kidnapping, although he told his attorneys he did not murder Maisie Gray.
Trial counsel repeatedly stressed to Thompson the importance of telling them the truth about what occurred on the night Maisie Gray was murdered. State's Exhibit 1 clearly establishes this fact. Thompson maintained that he did rob and kidnap Maisie Gray, but that Shirley Franklin actually murdered Maisie Gray. It was on this basis that trial counsel conducted their investigation and developed their strategy.
Trial counsel testified, and this Court finds that testimony credible, that in preparing for this case, trial counsel interviewed *Page 1231 
law enforcement personnel involved in the investigation of this case; members of Thompson's family; Thompson himself; and, every person that Thompson named as being a possible witness for him in this case. Trial counsel testified, and Defendant's Exhibit 20 and 21 reflect, that they visited the scene of the crime and searched for witnesses in the community. Trial counsel did not find anyone in the community to testify on Thompson's behalf, except for two of his friends, Jackie Pope and Connie Pope, and his mother, Joyce Parker.
Trial counsel spoke with Thompson's mother about Thompson's childhood and any traumas he may have experienced. The contrary testimony of Thompson's mother, Joyce Parker, is not credible because, based on her testimony and demeanor, she was biased and not a credible witness. In their many hours of discussion with Thompson, trial counsel also asked Thompson about his childhood, educational background, drug and alcohol problem, and religious background. Thompson's testimony to the contrary is not credible.
In addition, trial counsel filed many pretrial motions, including a motion to produce. Their motion to produce was granted and they reviewed material in the District Attorney's file. The trial attorneys also researched the legal and factual issues they anticipated would arise before and during trial.
Trial counsel filed the motions for psychiatric examination because this was a capital case and because they felt it would help them establish a diminished capacity defense. Trial counsel's motion for psychiatric examination and motion for independent psychiatric examination were both granted and Thompson was evaluated at Taylor Hardin Secure Medical Facility by a lunacy commission and by a private psychiatrist hired by trial counsel, Dr. R.A. Sleszynski.
In general, trial counsel's performance in investigating Thompson's case was thorough and Thompson has not demonstrated that trial counsel's performance was "outside the wide range of professionally competent assistance." 466 U.S., at 690
[104 S.Ct., at 2066]. He has not shown his trial counsel's performance was deficient with respect to his two specific allegations of inadequate investigation either.
In paragraph 19(b), Thompson claims that his trial counsel were ineffective because they failed to contact an eyewitness to the robbery of the victim. Thompson failed to name who the eyewitness to the robbery of Maisie Gray was and presented no testimony that there was in fact an eyewitness to the robbery of Maisie Gray. However, it appears from the testimony at the evidentiary hearing that Thompson is claiming that his trial counsel were ineffective for failing to contact a witness named Jack Lee Roberts.
Roberts is the same individual who is the basis of Thompson'sBrady claim discussed [in "Exculpatory Evidence," part D.], above. Trial counsel testified at the evidentiary hearing that they were aware that Roberts had given a description of an individual that he saw in the Majik Market shortly before Maisie Gray was discovered missing which description arguably did not fit the description of Thompson. However, based on their conversations with Thompson, trial counsel did not investigate this information further. Thompson had consistently maintained that he committed the robbery and kidnapping of Maisie Gray and it was reasonable for trial counsel not to contact Roberts in light of that fact. Trial counsel's reliance on what Thompson told them in guiding their investigation was reasonable. As was noted in Strickland v. Washington,466 U.S. at 690 [104 S.Ct. at 2066], the reasonableness of a counsel's actions may be determined or substantially influenced by what the defendant has told him.
Further, Thompson cannot establish prejudice with respect to this specific allegation of inadequate investigation. Roberts did not reveal to the police that he actually saw the robbery, kidnapping or murder of Maisie Gray. There is no evidence that, had this information been more thoroughly investigated, any more information would have been discovered. Thompson has failed to demonstrate that, but for counsel's *Page 1232 
performance in not contacting Roberts, the outcome of the trial would have been different.
In paragraph 19(f), Thompson claims trial counsel failed to investigate critical state witnesses. In his amended petition, Thompson does not name what "critical state witnesses" were not adequately investigated. At the evidentiary hearing, the only critical state witness referred to by Thompson was Shirley Franklin. This Court finds that an adequate investigation was made of Shirley Franklin.
Prior to the trial of this case, trial counsel received a tape recorded statement by Shirley Franklin given to the Etowah County authorities during the investigation of this case. In the transcript of that statement, Defendant's Exhibit 12, Shirley Franklin implicated Thompson as the perpetrator of the robbery/kidnapping/murder of Maisie Gray. Trial counsel were told by Thompson that Shirley Franklin had a prior felony conviction and trial counsel continually, but unsuccessfully, tried to obtain some confirmation of that fact. They finally had Shirley Franklin brought in and questioned and she admitted in a tape recorded interview that she had a prior armed robbery conviction and several escapes.
The Saturday before trial, Dobson received an NCIC report indicating that Shirley Franklin had a criminal record and, on the morning trial began, asked this Court to continue the case, which it refused to do. Trial counsel also objected to Shirley Franklin's testimony during the trial of this case because they had not been provided information on her prior criminal record.
Trial counsel also investigated Shirley Franklin's community reputation. They in fact discovered one witness who agreed to testify that Shirley Franklin had held a gun to his head while robbing him. That witness later refused to testify, however.
Trial counsel's investigation of the State's witness Shirley Franklin was not outside the wide range of professionally competent assistance. It was in fact a thorough, complete investigation. Trial counsel did everything they could to obtain impeachment evidence on Shirley Franklin. That they were unsuccessful does not mean their performance was deficient.
Even if trial counsel's performance was deficient, Thompson cannot show any prejudice. Shirley Franklin testified at the 1985 trial that she had been convicted of armed robbery, as an accessory, in Indiana and had received a ten year sentence (TR 415-418) She also testified that she had been convicted of escape in Indiana. (T.R. 419-20) Thompson's present counsel did not present any additional evidence at the evidentiary hearing, and there is no additional evidence in this case, indicating that Shirley Franklin had been convicted of any other offenses. Therefore, Thompson has not demonstrated any prejudice from failing to further investigate impeachment evidence on Shirley Franklin. There is no evidence that, but for trial counsel's performance, the outcome of Thompson's trial would have been different.
3. Allegation that trial counsel failed to seek order compelling compliance with motion to produce
In paragraph 19(r), Thompson alleges his trial counsel were ineffective because they failed to seek an order from this Court compelling the State to comply with this Court's February 5, 1985 order regarding production of documents, or produced documents so late that defense counsel were able to make little use of them at trial. This allegation is without merit.
Prior to trial, on January 31, 1985, trial counsel filed a motion to produce. (T.R. 77) That motion was granted, for the most part, on February 5, 1985. (T.R. 77) Trial counsel received twenty-five documents on February 25, 1985, as is reflected in Defendant's Exhibit 24.
This Court finds that with respect to efforts by trial counsel to obtain Shirley Franklin's criminal record, trial counsel did all that was required, and that their performance was not deficient. Insofar as Thompson claims that trial counsel should have requested an order compelling compliance with this Court's discovery order in *Page 1233 
any other respects, Thompson has not demonstrated that the State failed to produce any other documents subject to that discovery order. Trial counsel's performance cannot be found to be deficient for failing to request an order compelling compliance with an order that counsel reasonably thought had been complied with.
Thompson has not shown any prejudice from trial counsel's failure to request an order compelling compliance with the discovery order either. Shirley Franklin admitted her prior criminal convictions at trial and Thompson has not demonstrated that there were any additional convictions to be produced. Thompson has also failed to show that the prosecution failed to comply with the Court's discovery order in any other respect. Thompson has failed to show any prejudice with regard to this claim because he has not demonstrated that the absence of a motion to compel compliance with the discovery order had any effect at all on his trial.
4. Allegation that trial counsel failed to adequately seek a change of venue
In paragraph 19(d) of his amended petition, in that part of the petition labeled "Grounds for Petition," Thompson alleges his trial counsel were ineffective because they failed to adequately seek a change of venue. This allegation is without merit.
Trial counsel filed a motion for change of venue (TR. 63) and were heard on that motion on September 25, 1985. This Court took that motion under advisement and reserved ruling until after jury voir dire. (TR. 64) After jury voir dire, trial counsel renewed the motion for change of venue, predicated on the responses of potential jurors to questions posed during voir dire. (TR. 157) This Court denied that motion again based on the fact that all jurors indicated that they could put aside anything they had read, heard, or seen about the case and decide the case based on the evidence presented in Court. (TR. 155-56)
At the evidentiary hearing in this case, Thompson introduced 37 articles from several different news sources in support of this claim. The articles were from the Gadsden Times, TheBirmingham News, Birmingham Post-Herald, and the SouthernDemocrat. No evidence was presented regarding circulation figures in Blount County or how often each paper issued. This Court finds that the 37 articles are fact-based and are not sensational or inflammatory.
Trial counsel's performance was not deficient with respect to requesting a change of venue. Trial counsel did in fact request a change of venue prior to trial and subsequent to jury voir dire. Trial counsel properly sought to base their motion on voir dire responses. Trial counsel's performance was not deficient.
Further, Thompson has failed to establish prejudice. Before he can establish that he was entitled to a change of venue, "the defendant in a criminal case has the burden of showing there was such prejudice prevailing in the community where his trial was set that a fair and impartial trial could not be had." McLaren v. State, 353 So.2d 24, 31 (Ala.Cr.App.), cert.denied, 353 So.2d 35 (Ala. 1977). Because Thompson has failed to show that a fair and impartial jury could not be had in his case in Blount County, he has failed to establish that he was prejudiced by his trial counsel's failure in connection with the motion for change of venue.
All that petitioner presented at the evidentiary hearing in support of his contention that trial counsel should have obtained a change of venue were some newspaper articles. As the Alabama Court of Criminal Appeals has held:
 Newspaper articles alone would not necessitate a change of venue unless it was shown that the articles so affected the general citizenry through the insertion of such sensational, accusational or denunciatory statements, that a fair and impartial trial was impossible. Patton v. State, 246 Ala. 639, 21 So.2d 844 [1945].
McLaren v. State, 353 So.2d, at 31. The fact that a case generates even widespread publicity does not warrant a change of venue. E.g., Waldrop v. State, 459 So.2d 953, 955
(Ala.Cr.App. 1983), aff'd, *Page 1234 459 So.2d 959 (Ala. 1984); Sparks v. State, 450 So.2d 188, 191
(Ala.Cr.App.), cert. denied, No. 83-687 (Ala. 1984). Newspaper stories that are not inflammatory or sensational do not warrant a change of venue. Primm v. State, 473 So.2d 1149, 1155
(Ala.Cr.App.), cert. denied, No. 84-906 (Ala. 1985); McLaren v.State, 353 So.2d 24, 31 (Ala.Cr.App.), cert. denied,353 So.2d 35 (Ala. 1977). Thompson's evidence failed to establish that he was entitled to a change of venue and, therefore, he has failed to establish a reasonable probability that, but for the absence of a properly supported motion for a change of venue, the outcome of his trial would have been different. Because he cannot show that he was prejudiced, this claim is without merit.
5. Allegation that trial counsel failed to adequately voir dire jury
In paragraph 19(e) of his amended petition in that part of the petition labeled "grounds of Petition," Thompson alleges his trial counsel were ineffective because they failed to adequately examine jurors who would automatically sentence to death one convicted of a capital offense and because they failed to voir dire potential jurors in any way to effectively discern if they would be biased or should otherwise be struck for cause. Thompson presented no evidence at the evidentiary hearing as to this claim and this allegation is without merit.
Trial counsel adequately questioned potential jurors as to their feelings on the death penalty and as to any bias they might have had against Thompson. Furthermore, Thompson has not shown any prejudice as he has not demonstrated that questioning could have been conducted which would have resulted in a different outcome at trial.
6. Allegation that trial counsel failed to object to cause challenges by the State
In paragraph 19(i) of his amended petition in that part of the petition labeled "Grounds of Petition", Thompson alleges his trial counsel were ineffective because they failed to object to the prosecutor's improper and arbitrary exercise of cause challenges against some venire members. Thompson offered no testimony as to this claim at the evidentiary hearing and this allegation is without merit.
Only three potential jurors were challenged for cause during jury voir dire in this case. (TR. 85-87, 97-100, 167) All three challenges were made by Thompson's trial counsel. Because the State did not challenge any individuals for cause, trial counsel's performance was not deficient for failing to object to any cause challenges by the State. Thompson also cannot demonstrate that but for trial counsel's performance, the outcome of his trial would have been different and has therefore failed to prove prejudice.
7. Allegations that trial counsel failed to present an adequate defense strategy at the guilt phase
In paragraphs 19(g), (t), and (x) of his amended petition in that part of the petition labeled "Grounds Of Petition", Thompson alleges that his trial counsel were ineffective because they failed to adequately prepare, investigate, pursue, and present a defense strategy at the guilt phase of his trial. This allegation is without merit.
In support of this claim, Thompson presented expert testimony by Richard Jaffe, a criminal defense attorney practicing in Birmingham, hired by Thompson's present attorneys. It was Jaffe's opinion that trial counsel did not have a reasonable trial strategy and therefore rendered ineffective assistance. Jaffe was uncertain about the standard used to determine ineffective assistance claims under Strickland, and indicated that his opinions were not based solely on Strickland. Jaffe also testified that it is necessary to rely on information from your client in formulating a defense strategy and that he relies on such information in developing trial strategies. He also admitted that it is difficult to develop a defense strategy when there is a confession that is inconsistent with what your client has told you has occurred. Finally, Jaffe testified that it is not unusual for attorneys to disagree about how to conduct *Page 1235 
a defense and that just because the attorneys disagree doesn't mean that one strategy is right and the other is wrong.
As was discussed [in "Ineffective Assistance of Counsel," C. 1.], above, trial counsel developed their trial strategy based on the fact that Thompson continually maintained that he robbed and kidnapped Maisie Gray but that Shirley Franklin actually shot and killed Maisie Gray. Trial counsel's strategy at the guilt stage was to present evidence of Thompson's limited participation in the crime, to implicate Shirley Franklin as the murderer; and to present evidence of Thompson's diminished capacity due to his alcohol and drug use to negate the necessary intent. Trial counsel considered a possible insanity defense but based on their contact with Thompson and the report from Taylor Hardin Secure Medical Facility and the report from Dr. Sleszynski, a private psychiatrist hired by trial counsel, they rejected this defense. Trial counsel also attempted to have Thompson's statements to law enforcement authorities suppressed. Trial counsel's defense strategy was a reasonable strategy based on the facts presented to them.
Thompson has not shown that trial counsel's defense strategy at the guilt stage was deficient. In fact, it was a sound, reasoned strategy. Trial counsel made the type of sound strategic decision after reasonable investigation that the Supreme Court has found to be "virtually unchallengeable."Strickland, 466 U.S. at 690 [104 S.Ct. at 2066]. Thompson also has not demonstrated prejudice as this Court finds that the evidence presented in this case established Thompson's guilt beyond a reasonable doubt.
Thompson claims in paragraph 19(g) that trial counsel were specifically ineffective in their defense strategy because they failed to prepare Thompson to testify. This Court finds as a fact that trial counsel adequately discussed and prepared Thompson for trial and advised him of the defense strategy to be followed in his case. Trial counsel even went over the specific questions Thompson would be asked by them at trial. Therefore, trial counsel's performance was not deficient as to this specific claim. Further, Thompson has not demonstrated that, but for counsel's performance, the outcome of the trial would have been different. Thompson presented no evidence at the evidentiary hearing establishing that he was unprepared to testify or as to how a lack of preparation affected his trial.
Thompson claims in paragraph 19(t) that trial counsel was ineffective because it was admitted in opening statement that Thompson had kidnapped and robbed Maisie Gray and was present during her murder. Thompson presented testimony from Richard Jaffe regarding this specific allegation. It was Jaffe's opinion that trial counsel was ineffective for conceding guilt in opening statements. This Court rejects that opinion and finds that it was a reasonable strategic decision to admit Thompson's limited guilt in opening statements in order to diminish the impact of the evidence presented during the trial, especially in light of trial counsel's defense strategy to admit limited participation and argue that Thompson was less culpable than Shirley Franklin.
Thompson has also not shown that trial counsel's decision to admit guilt in the robbery and kidnapping, but to deny participation in the murder prejudiced his defense. In light of the fact that there was evidence presented at trial that Thompson did participate in the robbery/kidnapping/murder of Maisie Gray in the form of his confession, the testimony of Shirley Franklin, and Thompson's own testimony, he has failed to demonstrate any prejudice from his counsel's opening argument admitting participation in the crime.
8. Allegation that trial counsel failed to adequately cross-examine a critical State's witness
In paragraph 19(f) of his amended petition in that part of the petition labeled "Grounds Of Petition", Thompson alleges that his trial counsel were ineffective because they failed to adequately cross-examine critical State witnesses whose testimony *Page 1236 
had to be challenged to protect Thompson's interests and rights. Thompson did not indicate which State witnesses were not adequately cross-examined. However, this Court finds that trial counsel's cross-examinations of the State's witnesses were adequate and, especially with respect to Shirley Franklin and law enforcement officers, were thorough.
Because Thompson has not demonstrated what additional cross-examination should have been done or what cross-examination was improper, he has failed to establish that his lawyers' performance was deficient or that he was prejudiced by his lawyers' performance.
9. Allegation that trial counsel failed to object to the introduction of improper evidence
In paragraphs 19(j) and (o) of his amended petition in that part of the petition labeled "Grounds Of Petition", Thompson alleges his trial counsel were ineffective because they failed to object to the introduction of improper evidence at the guilt phase, penalty phase and sentencing hearing before the trial court. Thompson presented no evidence with respect to this claim at the evidentiary hearing and this allegation is without merit.
Thompson has not shown that any evidence admitted by this Court at any phase of Thompson's trial was improper or inadmissible. He has not shown any deficient performance by trial counsel with respect to this claim and he has not shown that, but for counsel's performance, the outcome of his trial would have been different.
10. Allegation that trial counsel failed to object to the victim's daughter's presence at the prosecution's table and other improper references to the worth of the victim
In paragraph 19(e) of his amended petition in that part of the petition labeled "Grounds Of Petition", Thompson alleges that his trial counsel were ineffective because they failed to object to the victim's daughter's presence at the prosecution table and because they failed to object to other improper references to the worth of the victim. Thompson presented no evidence on this claim at the evidentiary hearing and this allegation is without merit.
Trial counsel were not ineffective for failing to object to the victim's daughter's presence at the prosecution table because trial counsel were correct in their assessment that it was not objectionable for a member of the victim's family to sit at the prosecution table during the trial. See, Code ofAlabama 1975, § 15-14-56. Thompson has not demonstrated deficient performance by trial counsel or that, but for the victim's daughter's presence at the prosecution table, the outcome of his trial would have been different and has, therefore, not established the necessary prejudice.
Thompson's trial lawyers were also not ineffective in failing to object to references to the victim's family. Thompson was tried in 1985, two years before the United States Supreme Court's decision in Booth v. Maryland [482 U.S. 496]107 S.Ct. 2529 [96 L.Ed.2d 440] (1987) and four years before that Court's decision in South Carolina v. Gathers, 57 U.S.L.W. 4629 [490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876] (June 12, 1989). Thompson's trial lawyers were not obliged to object based on possible future developments in the law in order to render effective assistance. Knight v. Dugger, 863 F.2d 705, 733 (11th Cir. 1988); Elledge v. Dugger, 823 F.2d 1439, 1443 (11th Cir.),modified on other ground, 833 F.2d 250 (11th Cir. 1987), cert.denied [485 U.S. 1014], 108 S.Ct. 1487 [99 L.Ed.2d 715] (1988);Thompson v. Wainwright, 787 F.2d 1447, 1459 n. 8 (11th Cir. 1986), cert. denied [481 U.S. 1042], 107 S.Ct. 1986
[95 L.Ed.2d 825] (1987); Funchess v. Wainwright, 722 [772] F.2d 683, 691 (11th Cir. 1985), cert. denied, 475 U.S. 1031 [106 S.Ct. 1242,89 L.Ed.2d 349] (1986).
Thompson has also not demonstrated that the prosecutor in this case made "other improper references to the victim". Therefore, he has not shown that there is a reasonable probability of a different outcome *Page 1237 
in this case had there been objections to specific improper references.
11. Allegation that trial counsel distanced themselves from Thompson throughout the trial
In paragraph 19(p) and (n) of his amended petition in that part of the petition labeled "Grounds Of Petition", Thompson alleges that his trial counsel were ineffective because they improperly distanced themselves from Thompson throughout the trial as demonstrated by references to their appointment as trial counsel and by a reference in closing argument to the heinousness of the crime. This allegation is without merit.
Trial counsel told the jury that they were appointed before asking the jury voir dire questions and during opening statements. It simply is not deficient performance to advise a jury that trial counsel was appointed to represent a defendant. Even if it were deficient performance, Thompson has not demonstrated that it affected the outcome of his trial and has, therefore, not met the prejudice requirement ofStrickland.
In closing, McPherson told the jury:
 And in conclusion, Mr. Dobson and I are not condoning the acts of Michael Thompson in robbing Maisie Gray, in kidnapping her, and I want to say here and now to her family, that our sympathy goes out to them. And they have our sympathy. And this has been one of the most difficult tasks that I have had to do since standing in front of this bar for 17 years. But every defendant, no matter who he is, no matter how horrible, how heinous, how atrocious the crime he is charged with, he is entitled to the very best of the law and the Constitution of the United States.
(T.R. 799) Thompson alleges this argument by his trial counsel demonstrated a desire by counsel to distance themselves from him. Thompson's expert, Richard Jaffe, testified that in his opinion this argument was ineffective. This argument is consistent with trial counsel's defense strategy to admit guilt as to the robbery and kidnapping but to argue lesser culpability because of no participation in the murder. Further, even if this argument does demonstrate deficient performance by trial counsel, Thompson has not demonstrated that this brief comment undermines confidence in the outcome of Thompson's trial. No prejudice has been demonstrated by Thompson.
12. Allegation that trial counsel failed to have victim's body examined for blood or semen specimens
In paragraph 19(g) of the amended petition in the part of the petition labeled "Grounds Of Petition", Thompson alleges that his trial counsel were ineffective because they failed to seek to have the victim's body examined for blood or semen specimens which could have exculpated Thompson. Thompson presented no evidence in support of this claim at the evidentiary hearing and this allegation is without merit.
The victim's nude body was found submerged in water in an old well after over 20 days of exposure to the elements. Trial counsel had obtained copies of the autopsy report on the victim. Thompson's trial counsel did not seek examination of the victim's body due to the fact that they felt that little information could be obtained from the victim because of this exposure. Based on the information they had, they did not think it was necessary to have the body examined for blood and semen specimens.
Trial counsel also had a strategic reason for not seeking to have the victim's body examined for blood or semen specimens. According to what Thompson told his trial counsel, the only male who was present at the well at the time Maisie Gray was pushed into it was Thompson. Trial counsel felt that an examination of the body for semen specimens may have revealed that Thompson raped the victim, as well as having kidnapped and robbed her. Trial counsel made a reasonable strategic decision to forgo having the victim's body examined for blood and semen specimens. Further, Thompson has again failed to establish any *Page 1238 
prejudice from the failure of trial counsel to have the victim's body examined and this claim must fail.
13. Allegation that trial counsel failed to prepare, investigate, and present a penalty phase strategy
In paragraphs 19(k) and (n) of his amended petition, in that part of the petition labeled "Grounds Of Petition," Thompson alleges his trial counsel were ineffective because they failed to prepare, investigate, and present a penalty phase defense strategy and effectively make a case for saving Thompson's life and this allegation is without merit.
Thompson presented the testimony of Richard Jaffe in support of this claim. It was Jaffe's opinion that trial counsel should have made additional use of Thompson's addiction and substance abuse, and evidence of his violent background at the penalty phase of his trial. Jaffe testified that trial counsel were ineffective for failing to offer a meaningful mitigation defense. In his opinion, trial counsel should have pursued further, through investigation, the report of the private psychiatrist hired by them; should have called neighbors and friends of Thompson's to testify on his behalf; and should have looked at Thompson's school and medical records for possible mitigation. This Court rejects Jaffe's opinion that trial counsel failed to present a meaningful penalty phase defense and credits the testimony of Thompson's trial counsel on this issue.
Trial counsel knew before trial that there was a guilt phase and a penalty phase to a capital murder trial and they prepared for both phases prior to trial. The defenses to both phases were similar. As at the guilt phase, trial counsel presented evidence of Thompson's diminished capacity at the penalty phase through the testimony of his mother regarding his drug and alcohol abuse. Trial counsel also presented testimony regarding the effects of Thompson's father's death on him, in an attempt to garner sympathy for Thompson.
In addition, trial counsel spoke with family members, friends, people in the community, and anyone Thompson told them to talk to in an attempt to discover any possible mitigation. This investigation was unsuccessful. They also questioned Thompson about his religious affiliation and he denied any. Finally, trial counsel also made a motion for psychiatric examination and motion for independent psychiatric examination, both of which motions were granted by this Court. Trial counsel considered these reports and spoke with Dr. Sleszynski, the private psychiatrist hired by them. Based on the reports and their discussions with Dr. Sleszynski, they made a strategic decision not to present this evidence. This was a reasonable strategic decision, as is discussed more fully [in part 16], below.
Thompson has failed to demonstrate that trial counsel's performance was deficient. They investigated possible mitigating circumstances prior to trial, and based on what they found from this investigation, developed their penalty phase defense strategy. Because of the problems in discovering any witnesses who would come forward to testify on Thompson's behalf, and because Thompson adamantly refused to testify before the jury at the sentence phase, trial counsel presented the only witness in mitigation that they had, Joyce Parker, Thompson's mother. This was not deficient performance by trial counsel.
Thompson has also failed to establish prejudice. At the evidentiary hearing, Thompson presented several witnesses to demonstrate that trial counsel's investigation was inadequate and as a result his case was prejudiced. Thompson took the stand and testified about his drug and alcohol problems; about his traumatic upbringing in a violent household; about his religious experiences; about head injuries he received as a child; about the effects of his father's death on him; and about other traumatic experiences growing up. Thompson testified that he did not tell his trial counsel about these experiences because they did not ask him about it. He also testified that he was not given the opportunity to testify at the penalty phase *Page 1239 
of his trial. This last contention of Thompson's is directly contradicted by Thompson's testimony at his 1985 trial. (TR. 847-49) It is also contradicted by trial counsel's testimony at the evidentiary hearing. This Court finds that trial counsel asked Thompson about his background in an attempt to discover evidence to present in mitigation and he failed to reveal to them the information regarding his background that he testified to at the evidentiary hearing. The Court finds that the absence of this evidence at trial is attributable to Thompson's refusal to testify and not any deficiency in his counsel's performance.
This Court also finds that had Thompson presented this testimony to the jury, there is no reasonable probability that the outcome of his trial would have been different, because of the overwhelming evidence against Thompson and because there is no reasonable probability that the jury would have recommended anything but a sentence of death.
Further, this Court finds that had this Court or the jury heard the testimony of Laura Thompson, Alfred Lett, and Jerry Fleming at trial, there is no reasonable probability that the outcome of the trial would have been different. Laura Thompson's testimony was not helpful to Thompson's claim to have extensively abused drugs and alcohol in that she entrusted her infant child to his care, including riding in a car driven by him. Alfred Lett's testimony was not helpful to Thompson's claim to have used drugs and alcohol extensively in that he described Thompson as a good worker and further had only limited contact with Thompson. Reverend Fleming had no contact with Thompson for many months preceding the crime. Additionally, all of these witnesses displayed a strong bias toward Thompson which undercuts their credibility. This testimony is far from compelling and does not create a reasonable probability that, had it been presented, Thompson would not have been sentenced to death.
Joyce Parker's testimony also does not establish prejudice. Parker testified that she was never contacted prior to trial about testifying on behalf of her son. This testimony was contradicted by trial counsel. It is also reflected in Dobson's fee sheet, Defendant's Exhibit 20, that he spoke with Thompson's mother prior to trial. This Court finds that trial counsel's testimony was credible and that Parker's was not. This Court also finds that Parker's Rule 20 testimony was merely cumulative with respect to Thompson's drug and alcohol abuse and the effects on Thompson of his father's murder. Parker testified before the jury at trial as to that mitigation.
14. Allegation that trial counsel failed to object to improper statements of the Blount County Sheriff during trial
In paragraph 19(u) of his amended petition in that part of the petition labeled "Grounds Of Petition," Thompson alleges his trial counsel were ineffective because they failed to object to, or seek a mistrial as a result of, improper statements made by the Blount County Sheriff at Thompson's trial, in the presence of the jury, to the effect that a witness would not "come in and lie" for Thompson. Thompson testified to this alleged incident at the evidentiary hearing. This Court finds as a fact that Thompson was not a credible witness and that this allegation is without merit.
Thompson claimed that Blount County Sheriff J.C. Carr was in the courtroom and the jury was present when the Sheriff told him that Rickey Pope, a possible defense witness, was not coming to testify and said that Rickey would not come in and lie for him. Thompson claimed that the judge and defense and prosecution counsel were in chambers, out of the courtroom, when this incident occurred. Thompson claimed that when the judge and counsel returned to the courtroom, he told Dobson about this incident but Dobson did nothing about it.
Trial counsel testified that they had no recollection of the events that Thompson described. Dobson testified that he recalled Thompson telling him about something an officer said to him but does not recall that the jury was present. He also testified that it is not the practice in Blount *Page 1240 
County, and this Court finds that it is not the practice in Blount County, to leave a jury in the courtroom alone with the defendant. Dobson testified, and this Court finds as a fact, that Thompson also sat at the table farthest from the jury, so that even if Sheriff Carr had made the comment Thompson claims that he did, it was not likely that the jury heard the comment.
Based on the testimony, and the demeanor of the witness, this Court finds that the incident described by Thompson did not occur and that trial counsel's performance was not deficient in not objecting to a statement and incident which did not occur.
15. Allegation that trial counsel failed to object to the trial court's improper instructions to the jury
In paragraph 19(m), (w)(iii) and (w)(iv) of his amended petition in that part of the petition labeled "Grounds OfPetition," Thompson alleged that trial counsel were ineffective because they did not object to improper jury instructions. Thompson claims that this Court improperly instructed the jury as to: i) mitigating evidence and unconstitutionally limited what could be considered by the jury; ii) the Court's opinion that the courts were burdened by new procedures such as the procedure about to be followed and that there was nothing wrong with the procedures used in times past; and, iii) the weighing of aggravating and mitigating circumstances.
 i. Instructions on Mitigation
Thompson first alleges that this Court improperly instructed the jury on mitigating evidence in such a way that it limited what mitigation could be considered by the jury. Thompson has not demonstrated what instructions improperly limited what mitigation could be considered by the jury nor has he shown how the instructions were improper or how they prejudiced his case. There is no merit to this allegation. This Court specifically instructed the jury that:
 The mitigating circumstances [sic] does not have to be included in the list I have read to you in order for it to be considered by you. In addition to the mitigating circumstances previously specified, mitigating circumstances include any aspect of the defendant's character or record, and any of the circumstances of the offense that the defendant offers as a basis for a sentence of life in prison without parole instead of death.
This is a correct statement of the law under Eddings v.Oklahoma, 455 U.S. 104 [102 S.Ct. 869, 71 L.Ed.2d 1] (1982), and Thompson has failed to demonstrate that he was prejudiced by trial counsel's failure to object to these instructions.
 ii. Statement to Jury Regarding Burden of New Procedures
In paragraph 19(w)(iii), Thompson claims his trial counsel were ineffective for failing to object to this Court's statement to the jury, prior to instructing them at sentencing, that in this Court's opinion, the courts were burdened by new procedures such as the procedure about to be followed and that there was nothing wrong with the procedure used in times past. What this Court actually said before charging the jury at the sentence stage was the following:
 [I]t seems to me sometimes when I get to studying about the burden the law places on the Courts and also on the jury, especially the jury, our system sometimes this Court feels like it is getting bogged down to some extent with procedure, because the law didn't use to be that way in times past. And personally, I didn't find much wrong with it. Our framers of our Constitution didn't find anything wrong with it back when the Constitution was adopted. But in any event, we have the procedures that we must follow.
(TR. 868-69). This Court then proceeded to charge the jury which charge included an instruction that "no . . . remark or any other expression that I have made at any time during this trial, even during the guilt stage or during this sentence hearing, is intended to indicate any opinion of what the facts are or what the punishment should be." (TR. 880). This instruction clearly counteracts any prejudicial effect the quoted statement may have had. *Page 1241 
Thompson has not demonstrated that his trial counsel were ineffective for failing to object to this statement.
 iii. Weighing of Aggravating and Mitigating Circumstances Instruction
In paragraph 19(w)(iv), Thompson alleges trial counsel were ineffective because they failed to object to this Court's jury instructions regarding the weighing of aggravating and mitigating circumstances. Thompson presented no evidence at the evidentiary hearing as to how these instructions were improper. He also presented no evidence that the jury's recommendation of death was influenced by these instructions or that they would not have sentenced Thompson to death absent these instructions. The Court's instruction was proper and this allegation is without merit.
16. Allegations that trial counsel failed to adequately investigate Thompson's emotional and mental health problems and limitations
In paragraph 19(h), (s), and (w)(ii) of his amended petition in that part of the petition labeled "Grounds Of Petition,"
Thompson alleges that his trial counsel were ineffective because they failed to adequately investigate Thompson's emotional and mental health problems and limitations; because they failed to seek a prompt hearing on Thompson's motion for independent psychiatric examination; because they failed to procure an expert to testify at the sentence phase of the trial; and, because they failed to object to the denial of Thompson's motion or a continuance so that Thompson could obtain an independent psychiatric examination. This allegation is without merit.
As was discussed [under "Ineffective Assistance of Counsel," C. 2.], above, trial counsel conducted an extensive investigation of Thompson's background in an attempt to discover any possible mitigation. In addition, they asked for and received both a lunacy evaluation of Thompson at Taylor Hardin Secure Medical Facility and a private psychiatric examination by an examiner of their own choosing, Dr. R.A. Sleszynski, M.D. Based on their investigation and the results of these reports, trial counsel made a strategic decision to present evidence of Thompson's drug and alcohol problems and the effects of his father's death on Thompson through lay testimony. Thompson refused to testify before the jury at sentencing, so his trial counsel relied on Thompson's guilt phase testimony and the testimony of his mother in establishing this mitigating circumstance.
Trial counsel made a strategic decision not to use the information contained in Dr. Sleszynski's report or to have Sleszynski testify for two reasons. First, they considered that the information in the report was open to rebuttal by the Taylor Hardin report. The Taylor Hardin report established that Thompson was criminally responsible for his actions at the time of the crime even though at the time of "the alleged offense, it is possible Mr. Thompson was under the influence of self-administered intoxicants at that time." (CR. 83). Trial counsel felt that evidence from the Lunacy Commission report that Thompson was competent and that his self-administered intoxicants did not diminish his criminal responsibility could have been harmful to Thompson.
The second reason trial counsel did not use Sleszynski's report is because, after discussing the report with Sleszynski, trial counsel felt that Sleszynski was not sympathetic to their client and his attitude on the witness stand would be detrimental to their client. Trial counsel feared that, due to his lack of sympathy, Sleszynski could have harmed their client on cross-examination by the prosecution.
Trial counsel's strategic reasons for not using the Sleszynski report were within the "wide range of reasonable professional assistance," and Thompson has not demonstrated any prejudice from failure to use the report or from failure to investigate his drug and alcohol problems further.
Thompson presented two experts with respect to this issue: Richard Jaffe, a criminal defense attorney and Dr. Bill Beidelman, *Page 1242 
a clinical psychologist. Jaffe testified that trial counsel were ineffective for failing to make further use of Thompson's [addiction] and substance abuse and to have further argued this mitigation to the jury at the penalty phase. Trial counsel made a reasonable strategic decision not to present further testimony in the form of expert testimony at the penalty phase of Thompson's trial. As discussed above, this was a reasonable strategic decision and as Jaffe himself acknowledged it is not unusual for attorneys to disagree about strategy. Jaffe also acknowledged that trial counsel's discussions with Sleszynski could have formed a basis for not using his testimony at trial.
Beidelman was and is a clinical psychologist licensed to practice in Alabama. Beidelman was hired by Thompson's present counsel to interview him. Based on this interview of Thompson; his psychological testing of Thompson; his review of records in this case; and discussion with Thompson's mother, it was Beidelman's testimony that Thompson was suffering from alcoholism; poly-substance abuse; and anti-social personality disorder in remission. Beidelman testified that this diagnosis was accurate as to the time of the crime, as well. These were the same diagnoses given by Sleszynski and one of the members of the Lunacy Commission that evaluated Thompson. Thompson's trial attorneys had this information and Thompson has not shown that any failure to further investigate this issue prejudiced this case.
Thompson took the stand at the evidentiary hearing and testified about many things in his background, including his alcohol and drug problems; his violent upbringing; traumatic experiences in his life; and head injuries he received as a child. Thompson discussed these problems with Beidelman and Beidelman still had the same diagnoses that prior examiners of Thompson had. Therefore, Thompson has not shown any prejudice from his trial counsel's failure to discover this information so that they could present it to an expert to examine.
In paragraph 19(s), Thompson alleges that trial counsel failed to seek a prompt hearing on Thompson's motion for an independent psychiatric examination, and, when the Court granted the motion 18 days before the trial, failed to obtain the assistance of an expert psychiatric witness to testify at the penalty phase of the trial. Trial counsel made a motion for psychiatric examination after discussing the issue with Thompson on January 31, 1985 (CR. 76-76) and this Court granted that motion on February 5, 1985 (CR. 79-80). Trial counsel waited for the report from Taylor Hardin before seeking an independent examination, which was a reasonable trial decision. Trial counsel testified and this Court finds that subsequent to this Court granting their motion for an independent evaluation trial counsel diligently searched for and finally obtained an expert to examine Thompson. For the reasons set out above, trial counsel chose not to have that expert testify. Thompson has not shown that trial counsel's performance was deficient in this matter or that he was prejudiced by his lawyers' decision.
In paragraph 19(w)(ii), Thompson alleges that his trial counsel were ineffective because they did not object to this Court's denial of Thompson's motion for a continuance so that Thompson could obtain an independent psychiatric examination. Trial counsel moved for a continuance but their motion was denied by this Court. "It is well settled that a continuance in a criminal trial is addressed to the sound discretion of the court and will not be disturbed unless clearly abused.Young v. State, 469 So.2d 683 (Ala.Cr.App. 1985); Dawkins v.State, 455 So.2d 220 (Ala.Cr.App. 1984); Sparks v. State,450 So.2d 188 (Ala.Cr.App. 1985)." Howard v. State, 506 So.2d 351,352 (Ala.Cr.App. 1986). Trial counsel's performance was not deficient because they failed to object further to this Court's denial of the continuance and Thompson was not prejudiced since this Court did not abuse its discretion. Also, there was no prejudice because Thompson did obtain an independent psychiatric examination before trial. *Page 1243 
17. Allegations that trial counsel failed to object to the prosecutor's improper and misleading closing arguments
In paragraph 19(v) of his amended petition in that part of the petition labeled "Grounds Of Petition," Thompson alleges trial counsel were ineffective for failing to object to certain arguments made [by] the prosecutor in closing. This allegation is without merit.
Both trial counsel testified that they had a general policy of not objecting to closing argument unless it is prejudicial to a client because objections tend to draw attention to and emphasize that argument to the jury. It was also McPherson's opinion that objections during closing arguments can detract from gaining sympathy for a client from the jury. These are reasonable strategic reasons for not objecting to prosecutorial argument.
In order to prevail on a claim of ineffective assistance of counsel for failure to object to prosecutorial argument, Thompson must prove prejudice. The standard for determining whether prosecutorial argument entitles a petitioner to relief is whether there is a reasonable probability that the statements rendered the proceeding fundamentally unfair. Thompson alleges ten instances of improper argument in the petition.
Thompson's contention, that the prosecutor's assertions of opinion concerning the veracity of the defendant's testimony, i.e., repeated statements that the defendant had lied to the jury, were improper, is without merit. There was evidence that Thompson had changed his story regarding the events surrounding the robbery/kidnapping/murder of Maisie Gray and there was direct evidence impeaching his testimony at trial. The fact is that Thompson had lied and there was evidence of that presented in this case. The prosecutor's comments on the evidence were not improper.
Thompson's contention, that the prosecutor's discussion of the Biblical law of punishment, based upon the maxim an eye for an eye, a tooth for a tooth, a life for a life was improper, is without merit. Where defense counsel have argued Biblical law as Thompson's counsel did in closing (TR. 794, 800), prosecution argument replying to those arguments [is] not improper.
. . . [t]he prosecutor's arguments that the defense counsel did what they were supposed to do; that "I helped choose you"; and that "I take part in this as if I were on the jury" were not improper. These comments taken in context were arguments for the jury to do its duty. Arguments to the jury to carry out their proper function are not improper.
Thompson's contention, that the prosecutor improperly argued that Thompson might commit future crimes if turned loose and that the jury needed to rid the county of people like the defendant so that people can live without fear of his committing another crime . . ., is without merit. These are proper deterrence arguments. Trial counsel are not obliged to object to proper argument.
Thompson's trial lawyers did not render ineffective assistance by not objecting to the prosecutor's comment on Thompson's criminal ego. Even if this argument was improper, trial counsel's performance was not deficient. Thompson was not entitled to a perfect trial but rather a fair one and the absence of an objection to this one brief comment did not render his trial unfair.
Thompson's lawyers were also not ineffective in failing to object to references to the victim's family. As noted above, Thompson's trial lawyers were not required to object based on predictions as to how the law might develop. Therefore, his lawyers' performance was not deficient and this allegation, like the rest above, lacks merit.
18. Allegation that trial counsel failed to object to the trial court's denial of Thompson's request for a pre-trial suppression hearing
In paragraph 19(w)(i) of his amended petition in that part of the petition labeled "Grounds Of Petition," Thompson alleged that his trial counsel were ineffective because they failed to object to this Court's denial of their request for a pre-trial suppression hearing. Thompson received a complete suppression hearing before his *Page 1244 
confessions were admitted into evidence. He has failed to show that this Court's denial of his motion to have that hearing before trial prejudiced his case and he has, therefore, not demonstrated ineffective assistance of counsel with respect to this claim.
19. Allegations of Ineffective Assistance of Appellate Counsel
In paragraph 19(y)(i)-(vi) of his amended petition in that part of the petition labeled "Grounds Of Petition", Thompson alleges his appellate counsel, John Dobson and B.J. McPherson, were ineffective because they failed to adequately prepare Thompson's appeal and because they failed to raise certain issues on appeal. Thompson's appellate counsel's performance in preparing and effectuating his appeal was not deficient.
Dobson testified that prior to preparing the appellate brief in this case, he reviewed the entire record and wrote down all the adverse rulings made by this Court. He then researched all possible claims and decided based on that research to raise those claims he thought were likely to succeed. Dobson testified that he didn't raise several of the issues Thompson now claims he should have raised based on the law and his likelihood of success of the merits. In particular, he testified that he did not raise the venue issue; and the improper closing argument issue because based on his research, those issues would not have been successful on the merits. This Court finds that trial counsel ably researched and prepared Thompson's appeal in this case.
A lawyer is not required to raise all conceivable claims in order to render effective assistance. Lindsey v. Smith,820 F.2d 1137, 1144 (11th Cir. 1987). It is sound strategy for a lawyer to narrow the number of issues on appeal. Smith v.Murray [477 U.S. 527] 106 S.Ct. 2661, 2667 [91 L.Ed.2d 434] (1986). This type of winnowing out of weaker arguments in favor of those arguments likely to succeed is the type of effective appellate advocacy approved by the United States Supreme Court. The fact that Dobson and McPherson focused on issues other than those Thompson's current counsel has selected does not remove their representation of Thompson from the wide range of professionally competent assistance.
Thompson failed to establish that Thompson rendered ineffective assistance of counsel at trial or on appeal. He is not entitled to relief on any of his ineffective assistance of counsel claims.*
For the reasons set out above, it is hereby ORDERED, ADJUDGED, and DECREED that the above-styled Rule 20 petition for relief from conviction or sentence be DENIED.
Done this the 15th day of Feb., 1989.
 /s/ H.E. Holladay ----------------- H.E. HOLLADAY Presiding Circuit Judge
[1] These issues, as they appear in appellant's brief, include:
"I. PETITIONER WAS DENIED A FAIR TRIAL AS A RESULT OF THE INTRODUCTION INTO EVIDENCE OF ALLEGED CONFESSIONS THAT, IF GIVEN AT ALL, WERE GIVEN INVOLUNTARILY, AND WITHOUT THE PRESENCE OF COUNSEL, IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND OF THE STATE CONSTITUTION AND LAWS OF ALABAMA
 "A. The alleged confession was not proven to be voluntary, and thus should not have been admitted into evidence.
 "B. The alleged confession was the result of coercive tactics designed to overbear the will of Petitioner, and thus was involuntary and should not have been admitted into evidence.
". . . .
"II. PETITIONER'S CONVICTION WAS OBTAINED BY THE UNCONSTITUTIONAL FAILURE OF THE PROSECUTION TO DISCLOSE TO THE PETITIONER EVIDENCE FAVORABLE TO THE PETITIONER
 "A. The prosecution's failure to produce Shirley Franklin's criminal record prevented defense counsel from impeaching Shirley Franklin and establishing her lack of veracity.
". . . .
"XI. THE COURT IMPROPERLY CONSIDERED INADMISSIBLE EVIDENCE AT THE PENALTY STAGE IN VIOLATION OF MICHAEL THOMPSON'S RIGHTS
"XII. THE COURT IMPROPERLY FAILED TO WEIGH THE MITIGATING FACTORS OF MICHAEL THOMPSON'S CHRONIC ALCOHOL AND DRUG ABUSE AND EXTREME MENTAL DISTURBANCE AT THE PENALTY PHASE
". . . .
"XIV. THE TRIAL COURT'S FAILURE TO CONSIDER MICHAEL THOMPSON'S LACK OF SIGNIFICANT PRIOR CRIMINAL ACTIVITY AS A MITIGATING CIRCUMSTANCE WAS A VIOLATION OF ALABAMA LAW AND DEPRIVED MICHAEL THOMPSON OF HIS CONSTITUTIONAL RIGHTS"
[2] These claims, as they appear in appellant's brief, include:
"I. PETITIONER WAS DENIED A FAIR TRIAL AS A RESULT OF THE INTRODUCTION INTO EVIDENCE OF ALLEGED CONFESSIONS THAT, IF GIVEN AT ALL, WERE GIVEN INVOLUNTARILY, AND WITHOUT PRESENCE OF COUNSEL, IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND OF THE STATE CONSTITUTION AND LAWS OF ALABAMA
". . . .
 "C. The alleged confession was obtained in violation of Petitioner's rights under the Fifth and Sixth Amendments to the United States Constitution, and thus should not have been admitted into evidence.
 "D. The testimony given by Petitioner at trial should not have been admitted because it was given only as a direct result of the coercive and improper tactics used to extract the prior involuntary confession, and thus was 'tainted fruit of the poisonous tree.'
"III. PETITIONER WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL BY THE CONFLICT OF INTEREST RESULTING FROM HIS COUNSEL'S PRIOR REPRESENTATION OF THE KILLER OF THE PETITIONER'S FATHER
". . . .
"VI. THE VICTIM'S DAUGHTER'S PARTICIPATION IN THE PROSECUTION OF PETITIONER WAS HIGHLY IMPROPER AND DENIED PETITIONER A FAIR TRIAL AND DUE PROCESS
"VII. THE PROSECUTOR'S MISCONDUCT AND ARGUMENTS AT TRIAL AND AT PETITIONER'S SENTENCING HEARING BEFORE THE JURY AND BEFORE THE JUDGE WERE IMPROPER AND VIOLATED RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE STATE CONSTITUTION AND THE LAWS OF ALABAMA
"VIII. THE COURT'S FAILURE TO GIVE A JURY INSTRUCTION ON A LESSER INCLUDED OFFENSE WHERE THE EVIDENCE WOULD HAVE SUPPORTED SUCH A VERDICT DEPRIVED PETITIONER OF A FUNDAMENTALLY FAIR TRIAL IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND LAWS OF ALABAMA
"IX. THE COURT'S INSTRUCTIONS TO THE JURY VIOLATED PETITIONER'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL
"X. THE COURT IMPROPERLY INSTRUCTED THE JURY THAT IT'S VERDICT AT THE PENALTY STAGE WAS MERELY ADVISORY, THEREBY DENYING MICHAEL THOMPSON A FAIR TRIAL, DUE PROCESS AND OTHER CONSTITUTIONAL RIGHTS
". . . .
"XV. THE ALABAMA DEATH PENALTY STATUTE'S 'ESPECIALLY HEINOUS, ATROCIOUS AND CRUEL' AGGRAVATING CIRCUMSTANCE IS UNCONSTITUTIONALLY VAGUE ON ITS FACE, AS INTERPRETED BY ALABAMA COURTS AND AS APPLIED TO MICHAEL THOMPSON
"XVI. CERTAIN OTHER ASPECTS OF THE ALABAMA DEATH PENALTY SCHEME, AS INTERPRETED BY ALABAMA COURTS, VIOLATE THE UNITED STATES AND ALABAMA CONSTITUTIONS"
[3] These claims, as they appear in appellant's brief, include:
"XIII. THE PRE-TRIAL PUBLICITY GENERATED PREJUDICED THE COMMUNITY AND THUS THE JURY AGAINST MICHAEL THOMPSON. THEREFORE, THE COURT'S REFUSAL TO CHANGE VENUE, ALLOW INDIVIDUALIZED VOIR DIRE OR EXCLUDE JURORS WHO HAD BEEN SUBJECTED TO SUCH PUBLICITY WAS CONSTITUTIONALLY IMPROPER
 "A. The pretrial publicity generated by the alleged crime mandated a change of venue.
 "B. The trial court improperly refused to allow Michael Thompson's counsel to conduct individualized voir dire of the jury panel regarding their exposure to prejudicial material.
 "C. The trial court's refusal to dismiss those prospective jurors who had indicated that they had been exposed to pretrial publicity was improper and a violation of Michael Thompson's right to a fair trial.
". . . .
"XVII. THE TRIAL COURT IMPROPERLY REFUSED TO ALLOW INDIVIDUAL, SEQUESTERED VOIR DIRE OF PROSPECTIVE JURORS WITH RESPECT TO THEIR BELIEFS ABOUT THE DEATH PENALTY
"XVIII. THE TRIAL COURT'S EXCUSAL OF CERTAIN PROSPECTIVE JURORS WAS IMPROPER AND VIOLATED MICHAEL THOMPSON'S RIGHT TO A FAIR TRIAL"
[4] These claims, as they appear in appellant's brief, include:
"V. PETITIONER'S CONVICTION WAS OBTAINED BY THE UNCONSTITUTIONAL FAILURE OF THE PROSECUTION TO DISCLOSE TO THE PETITIONER EVIDENCE FAVORABLE TO THE PETITIONER
". . . .
 "D. The prosecution's failure to disclose Michael Thompson's refusal to waive his Fifth and Sixth Amendment rights creates a reasonable doubt as to Michael Thompson's guilt or sentence;
". . . .
"XI. THE COURT IMPROPERLY CONSIDERED INADMISSIBLE EVIDENCE AT THE PENALTY STAGE IN VIOLATION OF MICHAEL THOMPSON'S RIGHTS [to the extent he argues that the trial court considered statements other than in the pre-sentence report regarding other crimes committed by the defendant]"
* At the evidentiary hearing, in the testimony of Richard Jaffe, Thompson elicited Jaffe's opinion on actions and omissions by trial counsel which were not raised in the Rule 20 petition. Jaffe's testimony included references to trial counsel's non-objection to advising the jury that their verdict was advisory, to references to prior robberies, and to the failure to instruct on felony-murder among other things. Because this testimony did not relate to any allegation of ineffective assistance of counsel pleaded by Thompson, it cannot constitute a basis for relief. Thompson is not entitled to relief on any claim not pleaded with specificity. Temporary Rule 20.6(b), Alabama Rules of Criminal Procedure.